```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
                                                :
AURELIUS CAPITAL PARTNERS, LP and               :
AURELIUS CAPITAL MASTER, LTD.,                  :     07 Civ. 2715 (TPG)
                                                :
                    Plaintiffs,                 :
                                                :     OPINION
           – against –                          :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                    Defendant.                  :
                                                :
------------------------------------------------x
                                                :
AURELIUS CAPITAL PARTNERS, LP and               :
AURELIUS CAPITAL MASTER, LTD.,                  :     07 Civ. 11327 (TPG)
                                                :
                    Plaintiffs,                 :
                                                :
           – against –                          :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                    Defendant.                  :
                                                :
------------------------------------------------x
                                                :
BLUE ANGEL CAPITAL I LLC,                       :
                                                :     07 Civ. 2693 (TPG)
                    Plaintiff,                  :
                                                :
           – against –                          :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                    Defendant.                  :
                                                :
------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-23-10

Plaintiffs move for a turnover order directing the Republic of Argentina to deliver certain defaulted bonds into an account for the benefit of plaintiffs. Plaintiffs also move for an order permitting the U.S. Marshal to levy upon those bonds. Plaintiffs' motions are denied.

## Background

This action arises from the Republic of Argentina's December 23, 2001 default on its sovereign debt.

In November 2001, before the default, the Republic instituted an exchange offer to refinance approximately $42 billion of its outstanding debt. Under the terms of this offer, made pursuant to Argentine Decrees 1387/01 (Nov. 1, 2001) and 1646/01 (Dec. 12, 2001), Global Bond holders would exchange their bonds for local Argentine Guaranteed Loans, to be paid down with dedicated tax revenues, but at lower interest rates and over longer maturities.

To carry out the exchange, tendering bondholders agreed to place their Global Bonds in a Trust Account at Caja de Valores, S.A., an Argentine corporation located in Buenos Aires, Argentina. The December 7, 2001 Trust Agreement underlying the exchange offer laid out the requirements for bondholder participation: "In order for the transfer of the fiduciary property of the Assets Given in Trust to proceed, the Settlors must transfer the Securities [the Global Bonds] to the Trust Account . . . ." Trust Agreement § 2.1.2 (Dec. 7, 2001). The Trust

Account was defined as "the account that Caja will open for the purposes of this Agreement . . . ." Id. at § 1.

Caja is a privately owned Argentine securities depository located solely in Argentina, with no branches, no offices, and no employees in New York. Decl. of Severo Rizzo, ¶¶ 2-4.

The Global Bonds so tendered (hereafter the "Trust Bonds") were not terminated, but remained valid. Under the terms of the Trust Agreement, participating bondholders had a right to restitution of the Trust Bonds in the event of (1) a Republic default on the Guaranteed Loans, or (2) a subsequent exchange offer for Global Bonds on better terms. Caja would thus hold the Trust Bonds "for the benefit of the Republic of Argentina as Original Beneficiary and, as the case may be, of the Settlors, as Alternative Beneficiaries . . . ." Id. at § 2.1.4.

On December 23, 2001, one month after the exchange offer took place, the Republic defaulted on the Trust Bonds as part of its overall bond default. As a result, the Trust Bonds were nonperforming commencing shortly after the close of the Guaranteed Loan exchange offer. However, as far as the record shows, the Trust Bonds are still on deposit at Caja de Valores. It further appears that no circumstances have arisen giving the bondholders who participated in the exchange offer the right of restitution. There has been no Republic default on the Guaranteed Loans and no subsequent exchange offer for Global Bonds on better terms. Thus, under the provisions of the Trust Agreement, the

Republic remains the Original Beneficiary with respect to the Trust Bonds.

Plaintiffs argue that certain subsequent circumstances have in fact made the Republic the sole beneficial owner of the Trust Bonds. In the view of plaintiffs, the 2002 conversion of the principal value of the Guaranteed Loans from dollars to pesos, and a series of 2009 swap agreements exchanging the Guaranteed Loans for new debt instruments, have severed the Trust Bonds from the Guaranteed Loans for which they ostensibly served as collateral, making the original bondholders no longer alternative beneficiaries and providing the Republic with exclusive title.

In April 2008, plaintiffs initiated proceedings in this court to attach the defaulted Trust Bonds, with the ultimate intent of selling these bonds at the discounted value they maintain on the open market in partial satisfaction of plaintiffs' outstanding money judgments against the Republic.

On April 18, 22, and 25, 2008, this court granted injunctive relief in the form of ex parte temporary restraining orders ("TROs") enjoining the Republic from taking any action, or issuing any instructions to Caja or anyone else to take any action, to transfer, sell, pledge, loan, cancel, terminate, or otherwise encumber or alienate the Trust Bonds.

On April 30, 2008, the court held a hearing as to whether the TROs should be converted into preliminary injunctions. The court

reserved decision, continuing the TROs in the interim, so that on May 23, 2008, they automatically converted to preliminary injunctions. The Republic appealed.

On November 5, 2009, the Second Circuit issued a summary order remanding the case to this court with the restraining notices intact, instructing this court to undertake the necessary analysis to support a preliminary injunction within ten days or vacate the orders without prejudice. Seijas v. Republic of Argentina, 352 Fed. Appx. 519, 2009 WL 3683881 (2d Cir. Nov. 5, 2009).[1]

On November 19, 2009, this court on remand made further factual findings and confirmed the preliminary injunctions, thereby preserving the existing restraints pending resolution of the motion now before the court. The Republic's appeal from this court's confirmation of the preliminary injunctions is currently pending in the Second Circuit.

Plaintiffs now move pursuant to Sections 1610(a) and (c) of the Foreign Sovereign Immunities Act ("FSIA") and Sections 5225(a) and (c) of the New York Civil Practice Law and Rules ("CPLR") for a turnover order requiring the Republic to deliver the Trust Bonds to an account for the benefit of plaintiffs. Plaintiffs also seek an order permitting the U.S. Marshal to levy upon the Trust Bonds pursuant to Sections 5232(a) and 5234 of the CPLR by serving previously delivered writs of execution upon the Republic.

---

[1] The Aurelius plaintiffs were originally "me too" plaintiffs to the ex parte orders obtained in April 2008 by the Seijas plaintiffs. However, the Seijas plaintiffs are apparently no longer pursuing this claim.

## Discussion

Under the FSIA, a judgment creditor of a foreign state may only attach or execute against "property in the United States of a foreign state . . . used for a commercial activity in the United States . . . ." 28 U.S.C. § 1610(a). At issue in this case is whether the Trust Bonds, or the Republic's "beneficial interests" in them, are located "in the United States" for FSIA purposes.

It is clear that the Republic has an interest in the Trust Bonds as the Original Beneficiary under the terms of the Trust Agreement. Plaintiffs argue that the Republic's interest is now an exclusive one, which seems a dubious argument, but one which it is not necessary to decide, for the reasons outlined below. Whether exclusive or not, the Republic's interest in the Trust Bonds could be attached or executed upon. The issue is situs.

Plaintiffs rely on a Fifth Circuit decision holding that where the property interest of a foreign state is an intangible one, its situs for purposes of execution under the FSIA turns on the context. Af-Cap v. Congo, 383 F.3d 361, 371 (5th Cir. 2004). The Af-Cap court observed that the situs of an intangible asset is "necessarily a legal fiction," the selection of which must embody a "common sense appraisal of the requirements of justice and convenience in particular conditions." Id.

Plaintiffs argue that here, because the Republic's "beneficial interest" in the Trust Bonds is an intangible right lacking a physical

location, its situs should be determined using the "common sense appraisal" analysis outlined in Af-Cap. Undertaking such an analysis, plaintiffs note that the Republic issued the Trust Bonds in New York pursuant to a Fiscal Agency Agreement governed by New York law, and that the so-called "global" certificate underlying the original bond issue is held at the Depository Trust Company ("DTC") in New York. Plaintiffs argue that, based on these facts, a "common sense appraisal of the requirements of justice and convenience" would place the Republic's beneficial interest in the Trust Bonds "in the United States" for FSIA purposes, and therefore subject to the enforcement of plaintiffs' judgments.

Plaintiffs make reference throughout their submissions to the Republic's "beneficial interest" in the Trust Bonds. Even the Notice of Motion declares that plaintiffs "shall move this Court . . . for a turnover order directing the Republic of Argentina . . . to deliver into an account for the benefit of the Aurelius Plaintiffs certain beneficial interests in New York-issued Global Bonds . . ." (emphasis added). By declaring their objective to be the Republic's beneficial interest, plaintiffs frame the argument in terms of intangible interests, the situs of which is, in the words of Af-Cap, "necessarily a legal fiction." Af-Cap at 371.

Yet it is clear that what plaintiffs are seeking in this proceeding is not the Republic's beneficial interest in the Trust Bonds, but the Trust Bonds themselves. It is the Trust Bonds that retain a value on the

- 7 -

market. It is the Trust Bonds that, if this action is successful, will be sold by plaintiffs in partial satisfaction of their judgments.

In the opinion of the court, the situs analysis in this case is properly focused not on the Republic's beneficial interest in the Trust Bonds, but on the Trust Bonds themselves. The bonds are the property at issue, and the relevant inquiry is whether they are located "in the United States" for FSIA purposes.

Under the terms of the Trust Agreement, tendering bondholders were required to "transfer the Securities to the Trust Account." Trust Agreement § 2.1.2. The "Trust Account" was defined as "the account that Caja will open for the purposes of this Agreement." Trust Agreement § 1. Thus, under the explicit terms of the Trust Agreement, the tendered Trust Bonds were to be transferred to the Trust Account at Caja in Argentina, and from all evidence, this is what occurred. Decl. of Severo Rizzo, ¶¶ 5-6. It is true that the Trust Bonds are not physical objects maintained in a physical location. But this does not take away from the fact that they were deposited, in an ordinary commercial sense, at Caja de Valores in Argentina.

The court therefore holds that the situs of the Trust Bonds is Argentina. It follows that, because the Trust Bonds are not property "in the United States" of a foreign state, they are immune from attachment and execution under the terms of the FSIA.

The parties make further arguments regarding, among other things, (1) the availability here of a turnover order; (2) the applicability of the UCC to this controversy; and (3) whether the Trust Bonds were "used for a commercial activity in the United States" for FSIA purposes. However, because the resolution of the basic issue of situs disposes of the matter, it is unnecessary to reach these arguments.

Plaintiffs' motion for a turnover order is denied. Plaintiffs' motion for an order permitting the U.S. Marshal to levy upon the Republic's beneficial interest in the Trust Bonds is also denied.

The court will entertain a motion to vacate the preliminary injunctions of November 19, 2009, referred to earlier in this opinion.

SO ORDERED.

Dated: New York, New York
       July 23, 2010

                                    Thomas P. Griesa
                                    U.S.D.J.