UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                              :

AURELIUS CAPITAL PARTNERS, LP and  :
AURELIUS CAPITAL MASTER, LTD.,    :
                              :      **<u>OPINION</u>**

           Plaintiffs,    :

      – against –       :    07 Civ. 2715 (TPG)
                              :
THE REPUBLIC OF ARGENTINA,    :
                              :
           Defendant.    :
                              :
------------------------------------------------x
                              :

AURELIUS CAPITAL PARTNERS, LP and  :
AURELIUS CAPITAL MASTER, LTD.,    :
                              :
           Plaintiffs,    :    07 Civ. 11327 (TPG)

      – against –       :
                              :
THE REPUBLIC OF ARGENTINA,    :
                              :
           Defendant.    :
                              :
------------------------------------------------x
                              :

BLUE ANGEL CAPITAL I LLC,      :
                              :
           Plaintiff,     :
                              :    07 Civ. 2693 (TPG)
      – against –       :
                              :
THE REPUBLIC OF ARGENTINA,    :
                              :
           Defendant.    :
                              :
------------------------------------------------x

```
------------------------------------------x
                                          :
AURELIUS CAPITAL MASTER, LTD. and         :
ACP MASTER, LTD,                          :
                                          :
                    Plaintiffs,           :        09 Civ. 8757 (TPG)
                                          :
           – against –                    :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                    Defendant.            :
                                          :
------------------------------------------x
                                          :
AURELIUS CAPITAL MASTER, LTD. and         :
ACP MASTER, LTD,                          :
                                          :
                    Plaintiffs,           :        09 Civ. 10620 (TPG)
                                          :
           – against –                    :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                    Defendant.            :
                                          :
------------------------------------------x
                                          :
AURELIUS OPPORTUNITIES FUND II,           :
LLC and AURELIUS CAPITAL MASTER,          :
LTD.,                                     :
                                          :        10 Civ. 1602 (TPG)
                    Plaintiffs,           :
                                          :
           – against –                    :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                    Defendant.            :
                                          :
------------------------------------------x
```

```
------------------------------------------x
                                          :
AURELIUS OPPORTUNITIES FUND II,           :
LLC and AURELIUS CAPITAL MASTER,          :
LTD.,                                     :
                                          :    10 Civ. 3507 (TPG)
                         Plaintiffs,      :
                                          :
          – against –                     :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                         Defendant.       :
                                          :
------------------------------------------x
                                          :
AURELIUS CAPITAL MASTER, LTD. and         :
AURELIUS OPPORTUNITIES FUND II,           :
LLC,                                      :
                         Plaintiffs,      :    10 Civ. 3970 (TPG)
                                          :
          – against –                     :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                         Defendant.       :
                                          :
------------------------------------------x
                                          :
BLUE ANGEL CAPITAL I LLC,                 :
                                          :
                         Plaintiff,       :
                                          :    10 Civ. 4101 (TPG)
          – against –                     :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                         Defendant.       :
                                          :
------------------------------------------x
```

```
------------------------------------------x
                                          :
BLUE ANGEL CAPITAL I LLC,                 :
                                          :
                       Plaintiff,         :
                                          :       10 Civ. 4782 (TPG)
            – against –                   :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                       Defendant.         :
                                          :
------------------------------------------x
                                          :
AURELIUS CAPITAL MASTER, LTD. and         :
AURELIUS OPPORTUNITIES FUND II,           :
LLC,                                      :
                                          :
                       Plaintiffs,        :       10 Civ. 8339 (TPG)
                                          :
            – against –                   :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                       Defendant.         :
                                          :
------------------------------------------x
```

Plaintiffs Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd.,

ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital

I LLC (collectively, "Aurelius") own beneficial interests in defaulted bonds

issued by defendant, the Republic of Argentina (the "Republic").  On May 16,

2011, Aurelius applied for, and the court signed, two ex parte orders of

attachment.  The first was directed to the interests of certain entities connected

with the Republic in U.S. patents or pending patent applications.  The second

was directed to royalties generated by license agreements.  Aurelius now moves

to confirm the orders of attachment, and the Republic and non-party BASF

- 4 -

Corp. cross-move to vacate the orders.

The attachment orders are vacated.

<u>Facts</u>

<u>Procedural History</u>

Aurelius has eleven actions in this court pertaining to the Republic's bond default in 2001 and has been awarded eleven final judgments against the Republic for a total of about $1.2 billion.  Aurelius also has additional cases pending before the court seeking further money judgments.

As stated above, on May 16, 2011, this court ordered the <u>ex parte</u> attachment of certain patent interests and royalty interests of entities connected with the Republic.  The court also appointed a Receiver to preserve the status quo and protect the value of the property covered by the attachment orders.

The order relating to patent interests (the "Patent Attachment Order") purports to attach property interests held by the Republic in U.S. patents or patent applications, including any patent interests held by any of the following five Argentine entities:  *Agencia Nacional de Promocion Cientifica y Tecnologica* ("ANPCT"); *Consejo Nacional de Investigaciones Cientificas y Tecnicas* ("CONICET"); *Comision Nacional de Energia Atomica* ("CNEA"); *Instituto Nacional de Tecnologia Agropecuaria* ("INTA"); or *Instituto Nacional de Tecnologia Industrial* ("INTI").

The order relating to royalty fees (the "Royalty Attachment Order") focuses on two licensing agreements between INTA and BASF, a chemical

company.  The licensing agreements give BASF the right to commercialize a

rice gene technology developed by INTA, and the attachment order purports to

attach INTA's interests in licensing or royalty fees payable under the

agreements.

> In plaintiffs' request for the Royalty Attachment Order, plaintiffs stated:

> Upon information and belief, BASF has incorporated, or is in the
> process of incorporating, INTA's rice technology into its 'Clearfield'
> product line and/or other product lines that BASF sells in the
> United States, for which it is contractually obligated to pay
> royalties to INTA on the basis of its commercialization of INTA's
> rice gene technology in the United States.

Plaintiffs' Brief at 2.  Plaintiffs served the attachment order on BASF

Corporation ("BASF Corp."), a North American company that is present in New

York.

Plaintiffs move to confirm both attachment orders.  They also request

that the court enter an order transferring the patent interests to the court-

appointed Receiver.  Defendant and non-party BASF Corp. move to vacate both

attachment orders.

There is a voluminous record on these motions about the facts relevant

to the various issues raised.  Much of this submission relates to the nature of

the Argentine entities, and their relation to the Republic.  The issue here is

whether the property of the entities can be considered to be the property of the

Republic for the purposes of attachment.

To date, plaintiffs have identified a variety of scientific and medical

technologies that are apparently the subject of 47 patents and pending patent

applications.  These patents and patent applications involve various of the

Argentine entities.  However, as far as the record shows, none of the patents have given rise to commercial activity in the United States, within the meaning of the relevant statute, the Foreign Sovereign Immunities Act (the "FSIA), and only two pending patent applications involve technology which is used in commercial activity.  Those pending applications relate to INTA's rice gene technology.  This technology is also the subject of the licensing agreements referred to earlier.

Consequently, there is no need for the court in this opinion to describe any of the entities except for INTA.  And there is no need to describe any of the patents or pending patent applications except those of INTA.

*Instituto Nacional de Tecnologia Agropecuaria* ("INTA")

The FSIA distinguishes the sovereign state from an agency or instrumentality of the sovereign state.  There are somewhat different rules regarding attachments depending on whether it is the sovereign's property or an instrumentality's property that is sought to be attached.  Plaintiffs contend that INTA is part of the Republic.  They make no argument that there can be an attachment if INTA is an agency or instrumentality of the Republic.

INTA is a decentralized autarkic agency.  Under Argentine law, autarkic entities have full capacity to act on their own behalf and in their own name, enter into contracts, and to serve as plaintiffs or defendants in legal proceedings.  They are created to serve public, governmental purposes.

INTA is a governmental research institution within the Argentine Ministry of Agriculture, Livestock, and Fisheries.  According to the Executive Decree

that created INTA, its mission is to promote agricultural science and research pursuant to "the directives of the National Executive Branch," in order to fulfill the state's responsibility to promote the efficient development of agricultural production.  INTA Decree No. 21,680, at preamble & arts. 1-2.

INTA is headed by the Argentine Minister of Agriculture.  It is governed by a ten-member advisory board, seven of whom are nominated by independent agricultural entities, including agricultural producers and agronomy and veterinary schools.  The board has the power to issue INTA's internal rules, prepare a budget, and hire, promote, and dismiss personnel.  The board's members are appointed by the Executive Branch, but the National Executive may only appoint individuals that were nominated. The Advisory Board appoints INTA's National Director, who is in charge of INTA's day-to-day operations.

INTA's budget is made up primarily of tax revenues imposed by the Republic and earmarked for INTA's use, along with contributions from provincial governments, and other independent sources of operating revenue. Plaintiffs state that INTA generally does not pay any periodic federal taxes, while the Republic states that INTA pays periodic federal taxes.

The court previously found that INTA was a separate agency or instrumentality—rather than a part of the Republic—and that another debtor, EM Ltd., could not attach a bank account held by INTA.  EM Ltd. v. Republic of Argentina, 2009 WL 3149601, at *6 (S.D.N.Y. Sept. 30, 2009), vacated in part on other grounds, 2010 WL 3910604 (S.D.N.Y. Sept. 30, 2010).  In that case,

the plaintiff sought to attach an account of INTA held at BNA's New York branch.  The account contained about $2,000.  EM Ltd. requested discovery as to INTA, but the court denied it because the court did not "believe that further discovery as to the status of INTA is justified."  Id. at *7.  The court does not consider itself bound to follow now its ruling with regard to the $2,000 bank account and will consider the status of INTA anew on this motion.

INTA's Rice Gene Technology and the BASF Licensing Agreements

INTA has developed a rice gene (the "Rice Gene") and a rice variety incorporating that gene (the "Rice Variety") that are resistant to herbicides used against "red rice," a weed that has significantly harmed the output of rice fields worldwide.  In 2005, INTA entered into two licensing agreements (the "Rice Gene License Agreement" and the "Rice Variety License Agreement") with BASF Agrochemical Products B.V. ("BASF B.V."), a corporation organized under the laws of the Netherlands and with its principal place of business there.  Together, the agreements granted BASF B.V. exclusive licenses to develop, make, use, and sell INTA's Rice Gene and Rice Variety, everywhere in the world outside of Uruguay and Argentina, in exchange for contractual royalties payable to INTA.

BASF B.V. maintains most of the intellectual property rights of the BASF group of companies in connection with herbicide tolerant crops.  BASF B.V. is a Dutch subsidiary of BASF SE, one of the world's leading chemical companies based in Germany.  It has been in existence for more than a decade.  BASF Corp. is a Delaware corporation headquartered in New Jersey, and is the North

American subsidiary of BASF SE.  BASF B.V. is affiliated with BASF Corp., but is not owned or controlled by BASF Corp.  BASF Corp. is not a party to the INTA license agreements.

BASF SE's agricultural business includes a line of products marketed and sold under its Clearfield brand.  The Clearfield system is a combination of herbicides and seeds that are tolerant to those herbicides.  Although BASF sells Clearfield rice products in the United States, those products do not use any technology developed or licensed by INTA.  INTA's Rice Variety has been sold by BASF as part of its Clearfield product line exclusively in Costa Rica and Brazil.  INTA has received royalties from BASF B.V. for sales in Costa Rica and Brazil.  INTA has not received royalties from BASF B.V. for sales in any other countries, including the United States.

BASF has applied in the United States for two patents in INTA's name with respect to the herbicide-resistant rice plants that are at issue; the applications remain pending.

BASF Corp. reports that the process of commercializing an herbicide resistant rice varietal takes 7 to 10 years, and is unique to each region in which the final product will be sold.  BASF Corp. has not taken any steps to commercialize a product using INTA's technology in the United States.  Based on current market conditions, there are no plans to do so.  As noted above, BASF has already commercialized other herbicide resistant rice varieties under the Clearfield brand in the United States.

As part of the administrative services provided to its affiliate BASF B.V.,

- 10 -

BASF Corp. has in the past gathered sales information necessary to prepare a written report of royalty payments due under the INTA license agreements and has paid the amount due on behalf of BASF B.V., which was immediately reimbursed by BASF B.V.

Discussion

There are various issues that are raised regarding the validity of the attachment of the patents and pending patent applications and the attachment of royalties under the INTA license agreements.  However, the court wishes to start with the issue of commercial activity in the United States since the court is constrained to hold that the attachments must be denied on the basis of this issue.

The legal standards governing whether a creditor of the Republic may enforce its claims and judgments against a property interest of the Republic arise from the intersection of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. (the "FSIA"), applicable to judgment enforcement proceedings against foreign governments, and New York State's pre- and post-judgment enforcement procedures, applicable pursuant to Rules 64 and 69 of the Federal Rules of Civil Procedure.

Section 1610(a) of the FSIA

Under Section 1609 of the FSIA, all property of a foreign state is immune from attachment or execution unless an exception to such immunity exists under Section 1610.  Section 1610, in turn, provides that property of a foreign state located in the United States and "used for a commercial activity in the

United States" can be attached.  28 U.S.C. § 1610.

    1.  Use for Commercial Activity in the United States

The Supreme Court has held that "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992); see also 28 U.S.C. § 1603(d) ("The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.").

Activity related to licensing of patents has been considered "commercial activity."  See, e.g., Intel Corp. v. Commonwealth Scientific & Indus. Research Org., 455 F. 3d 1364, 1370 (Fed. Cir. 2006) (holding that Australia's national science agency, the assignee of a U.S. registered patent, had engaged in "commercial activity" under the FSIA when it participated in patent licensing negotiations in the U.S., even though the negotiations never resulted in a fully executed, binding contract).

However, the use requirement of § 1610 is relatively stringent:

> Section 1610(a) does not say that the property in the United States of a foreign state that 'will be used' or 'could potentially be used' for a commercial activity in the United States is not immune from attachment or execution.  More is required:  the property in the United States of a foreign state must be used for a commercial activity in the United States 'upon a judgment entered by a court of the United States or of a State.'

Aurelius Capital Partners, LP v. Republic of Argentina, 584 F.3d 120, 130 (2d Cir. 2009).  "The plain language of the statute suggests that the standard is

actual, not hypothetical, use." EM Ltd. v. Republic of Argentina, 473 F.3d 463, 484 (2d Cir. 2007).

The Ninth Circuit has further held that property must be used "in a commercial activity separate from the transaction that generated the property in the first place." See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd., 475 F.3d 1080, 1095 (9th Cir. 2007) (internal quotation omitted).  "What matters under [Section 1610(a)] is what the property is used for, not how it was generated or produced." Id. at 1087 (internal quotations omitted); see also NML Capital, Ltd. v. Republic of Argentina, 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011) ("While a contract to purchase goods in the United States constitutes commercial activity, that property is not subject to attachment if it is not itself 'used for' commercial activity within our borders.").

Aside from the INTA-BASF license agreements, considered in more detail below, there is no indication that any of the U.S. patents or patent applications have been commercialized in the United States.  The Argentine entities have applied for and, in some cases, been granted U.S. patents.  However, the filing of patent applications and the obtaining of patents represents at most the generation of a property interest, not its commercial use.

The same is true with respect to INTA's pending patent applications. According to BASF Corp., there are no plans to commercialize INTA's technologies—or, by extension, INTA's pending patent applications—within the United States.  Without evidence that the Republic is actively using its patent interests for commercial activity in the United States, the interests cannot be

attached pursuant to the FSIA.  Therefore, the Patent Attachment Order must be vacated.

The Royalty Attachment Order with respect to INTA's license agreements with BASF presents somewhat different issues.  Plaintiffs argue that the Republic has used its rice gene technology in the United States because it has contracted with an American company—BASF Corp.—to market, develop, and commercialize the technology.  As noted above, the license agreements at issue are between INTA and BASF B.V., a Dutch entity.  It is true that BASF Corp., which is located in the United States, has paid some royalty fees to INTA on behalf of its affiliate, BASF B.V.  However, the fact that BASF Corp. has acted or is acting as a paying agent in the United States does not mean that INTA's contractual right to receive royalties related to its rice gene technology—or even the rice gene technology itself—was put to commercial use in the United States. BASF Corp. used funds in the United States to temporarily advance royalty payment to INTA for sales in Costa Rica and Brazil.  This does not constitute commercial activity in the United States.   The Royalty Attachment Order must be vacated.

### 2.  Situs of the Property Rights

The Republic argues that the Patent Attachment Order should be vacated because any interests the Republic has in U.S. patents or pending patent applications cannot be said to be located in the United States, as is required for a proper attachment under 28 U.S.C. § 1610.  The court does not reach this question because, as noted above, there is nothing in the record to indicate

that any of the property interests in question have been used for a commercial activity in the United States.

Once again, however, the Royalty Attachment Order presents somewhat different issues. In plaintiffs' submissions in support of their application for the Royalty Attachment Order, they stated their belief that BASF had incorporated, or was "in the process of incorporating, INTA's rice technology into its 'Clearfield' product line and/or other product lines that BASF sells in the United States, for which it is contractually obligated to pay royalties to INTA on the basis of its commercialization of INTA's rice gene technology in the United States." It now appears that this belief was mistaken.

As noted above, INTA has entered into two licensing agreements with BASF B.V., granting BASF B.V. exclusive licenses to develop, make, use, and sell INTA's Rice Gene and Rice Variety, everywhere in the world outside of Uruguay and Argentina, in exchange for contractual royalties payable to INTA. To date, BASF has sold products containing these technologies in Costa Rica and Brazil only and has paid royalties only for sales in those countries. Plaintiffs have served the attachment order on BASF Corp., which is located in the United States. Although BASF Corp. has paid some royalties to INTA on behalf of its affiliate BASF B.V., BASF Corp. is not a party to the license agreements.

BASF Corp. argues that the Royalty Attachment Order should be vacated because plaintiffs incorrectly seek to enforce the order on BASF Corp., which is not a party to the INTA License Agreements and which does not hold any

assets of the Republic or of INTA.  Plaintiffs argue that the attachment order is valid because they seek to attach the Republic's intangible contractual rights to receive royalties under the licensing agreements.  Plaintiffs claim that these rights are located in the United States because BASF Corp. has performed services under the agreements on behalf of BASF B.V.  Plaintiffs also suggest that the Republic and/or BASF structured these agreements as a sort of "shell game" to avoid attachment under the FSIA.

If an attachment order is to be served on a person other than the defendant, that entity must, at the time of the attachment, be in the "possession or custody of property in which such person knows or has reason to believe the defendant has an interest."  CPLR § 6214(b).  "Courts must be extremely reluctant to disregard corporate form, and should do so only when the corporation *primarily* transacts the business of the dominating interest rather than its own."  U.S. v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000) (internal citation omitted).

Despite plaintiffs' contentions, there is no indication whatsoever that BASF B.V. was created or is being used to engage in a shell game.  It is a legitimate corporate entity—separate from BASF Corp.—that has been in existence for more than a decade.  BASF B.V. is not located in the United States, and no entity related to BASF or INTA has sold any products containing the INTA technologies in the United States.  The license agreements and the royalty rights they give rise to are not located in the United States.  BASF Corp.'s services on behalf of BASF B.V. do not change this fact.

- 16 -

INTA's Relationship to the Republic

As noted above, the FSIA distinguishes the sovereign state from an agency or instrumentality of the sovereign state, and somewhat different rules apply to attachments depending on whether it is the sovereign's property or an instrumentality's property that is sought to be attached.

The outcome is not clear as to whether INTA is part of the Argentine government or is a separate agency or instrumentality. There are factors for each side, although there appears to be a probability that INTA should be held to be an agency or instrumentality of the Republic. Because the attachment orders must be vacated due to a lack of commercial activity in the United States, the court does not decide this issue.

The Republic and BASF's Additional Arguments

The Republic and BASF have made additional arguments supporting their motions to vacate the attachment orders. The Republic argues that the attachment orders are overbroad, and the Republic and BASF urge the court to vacate the Patent Attachment Order because of the possible effects on the rights of third parties, including BASF. However, because the attachment order should be vacated on the other grounds discussed above, the court does not reach these further arguments.

Conclusion

The court grants defendant's and BASF's motions to vacate the attachment orders. The court denies plaintiffs' motions to confirm the attachment orders.

- 17 -

This opinion resolves the motions listed as document numbers 72, 82, 89, 90, and 114 in case 09 Civ. 10620, as well as the same motions in the related cases.

SO ORDERED.

Dated:  New York, New York
        March 22, 2012

*Thomas P. Griesa*

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3|22|12