UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------x
                                          :
EM LTD.,                                  :
                                          :
                      Plaintiff,          :        **OPINION**
                                          :
             – against –                  :
                                          :        03 Civ. 2507 (TPG)
THE REPUBLIC OF ARGENTINA,                :
                                          :
                      Defendant.          :
                                          :
------------------------------------------x
                                          :
AURELIUS CAPITAL PARTNERS, LP and         :
AURELIUS CAPITAL MASTER, LTD.,            :
                                          :
                      Plaintiffs,         :        07 Civ. 2715 (TPG)
                                          :
             – against –                  :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                      Defendant.          :
                                          :
------------------------------------------x
                                          :
AURELIUS CAPITAL PARTNERS, LP and         :
AURELIUS CAPITAL MASTER, LTD.,            :
                                          :
                      Plaintiffs,         :        07 Civ. 11327 (TPG)
                                          :
             – against –                  :
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                      Defendant.          :
                                          :
------------------------------------------x
```

```
-----------------------------------------x
                                         :
BLUE ANGEL CAPITAL I LLC,                :
                                         :
                    Plaintiff,           :
                                         :        07 Civ. 2693 (TPG)
          – against –                    :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
                                         :
-----------------------------------------x
                                         :
AURELIUS CAPITAL MASTER, LTD. and        :
ACP MASTER, LTD,                         :
                                         :
                    Plaintiffs,          :        09 Civ. 8757 (TPG)
                                         :
          – against –                    :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
                                         :
-----------------------------------------x
                                         :
AURELIUS CAPITAL MASTER, LTD. and        :
ACP MASTER, LTD,                         :
                                         :
                    Plaintiffs,          :        09 Civ. 10620 (TPG)
                                         :
          – against –                    :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                    Defendant.           :
                                         :
-----------------------------------------x
```

------------------------------------------------x
                                    :

AURELIUS OPPORTUNITIES FUND II,  :
LLC and AURELIUS CAPITAL MASTER,  :
LTD.,  :
  :    10 Civ. 1602 (TPG)
                Plaintiffs,  :
  :
     – against –  :
  :
THE REPUBLIC OF ARGENTINA,  :
  :
                Defendant.  :
  :
------------------------------------------------x
  :

AURELIUS OPPORTUNITIES FUND II,  :
LLC and AURELIUS CAPITAL MASTER,  :
LTD.,  :
  :    10 Civ. 3507 (TPG)
                Plaintiffs,  :
  :
     – against –  :
  :
THE REPUBLIC OF ARGENTINA,  :
  :
                Defendant.  :
  :
------------------------------------------------x
  :

AURELIUS CAPITAL MASTER, LTD. and  :
AURELIUS OPPORTUNITIES FUND II,  :
LLC,  :
                Plaintiffs,  :    10 Civ. 3970 (TPG)
  :
     – against –  :
  :
THE REPUBLIC OF ARGENTINA,  :
  :
                Defendant.  :
  :
------------------------------------------------x

```
-------------------------------------------x
                                           :
BLUE ANGEL CAPITAL I LLC,                  :
                                           :
                      Plaintiff,           :
                                           :      10 Civ. 4101 (TPG)
              – against –                  :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                      Defendant.           :
                                           :
-------------------------------------------x
                                           :
BLUE ANGEL CAPITAL I LLC,                  :
                                           :
                      Plaintiff,           :
                                           :      10 Civ. 4782 (TPG)
              – against –                  :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                      Defendant.           :
                                           :
-------------------------------------------x
                                           :
AURELIUS CAPITAL MASTER, LTD. and          :
AURELIUS OPPORTUNITIES FUND II,            :
LLC,                                       :
                                           :      10 Civ. 8339 (TPG)
                      Plaintiffs,          :
                                           :
              – against –                  :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                      Defendant.           :
                                           :
-------------------------------------------x
```

Plaintiffs Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd.,

ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, and Blue Angel Capital

I LLC (collectively, "Aurelius"), and EM Ltd. ("EM") own beneficial interests in

defaulted bonds issued by defendant, the Republic of Argentina (the
"Republic").

On August 1, 2011, the court granted Aurelius's <u>ex parte</u> application for
an order of attachment.  The order attached and restrained approximately $2.2
billion in accounts of *Banco Central de la República Argentina* ("BCRA") and
Citibank at the Federal Reserve Bank of New York ("FRBNY").  Plaintiffs alleged
that the funds were for payment to the holders of so-called BODEN 12 bonds.
On August 9, 2011, the court granted EM's application for an order of
attachment against the same funds.

Plaintiffs now move to confirm the attachment orders and for expedited
discovery from the Republic and BCRA concerning the attachment orders and
compliance therewith.  The Republic, BCRA, and Citibank cross-move to vacate
the attachment orders.  The FRBNY has also submitted a letter requesting that
the court vacate the attachment orders.

Rulings

The attachment orders are vacated.  The plaintiffs' motion for expedited
discovery is denied.

As will be explained in detail, the above rulings are compelled by the law
and the facts.  However, the court notes the following.  This is yet another
situation growing out of the Republic's continued intransigence in failing to
honor its lawful judgment debts.  The plaintiffs in these cases, in seeking to
vindicate their legal rights, are not able to do so by any regular and clear-cut
devices.  They are virtually forced to use methods of attempted recovery which

are strained and uncertain.  When this is done, the Republic and those acting

with it will come to court with a full panoply of "merits" which usually prevail

in defeating the plaintiffs' attempts to recover.  But it should be borne in mind

that these "merits" are asserted, not on behalf of a party seeking in good faith

to comply with the law, but on behalf of the Republic of Argentina which is

defying its obligations under the law.

Facts

Procedural History

Aurelius has been awarded 11 final judgments against the Republic in

the above-captioned cases for a total of about $1.2 billion.  Aurelius also has

additional causes of action pending before the court for further money

judgments.  EM has been awarded a final judgment of about $595 million in its

above-captioned case.

As stated above, on August 1, 2011, and August 9, 2011, the court

ordered the ex parte attachment of funds in the accounts of BCRA and

Citibank at the FRBNY.  Specifically, the orders purport to attach:

> any funds or other property (tangible or intangible) up to the
> aggregate amount of $2,206,700,000 in any BCRA and/or Citibank
> account(s) at the FRBNY that are either (i) received on or about
> August 1, 2 or 3, 2011 via wire transfer, Fedwire, SWIFT or any
> other means of transfer or instruction or (ii) the subject of any
> direction or instruction to transfer out on or about August 2 or
> August 3, 2011, and which transfer or instruction into or out of
> the aforementioned account(s) references or relates to bonds of the
> Republic or payments in respect of any such bonds, including but
> not limited to the BODEN 12 bonds . . . .

In seeking the orders, plaintiffs claimed that the Republic would be

making payments to the BODEN 12 bondholders by transferring funds from

BCRA's account at the Bank for International Settlements (the "BIS") in Switzerland, to BCRA and Citibank accounts at the FRBNY, as the Republic's paying agents for the bonds, for further payment to the bondholders. Plaintiffs believed that these transfers would be happening between August 1 and August 3. They sought to attach the Republic's property while it was in the BCRA and Citibank accounts at the FRBNY, before the funds could be transferred out. In plaintiffs' memorandum of law in support of the application for the order, plaintiffs stated that the funds were "expected to be removed from the FRBNY within hours, perhaps seconds, after receipt."

On August 4, 2011, the court held a conference to discuss concerns of the FRBNY regarding the scope of the attachment order. In response to the order, the FRBNY had apparently shut down BCRA's account, which jeopardized the functioning of BCRA. At the conference, the Republic emphasized that there were no assets of the Republic at the FRBNY, and that any assets in the BCRA or Citibank accounts were held in the custody of the BODEN 12 bondholders, not of the Republic. The court clarified that the intention of the order "was to attach funds that belonged to the Republic, funds which were deposited and still belonged to the Republic. . . . As far as the status of the funds to pay the bondholders interest or principal, obviously, there could be no attachment of funds belonging to the bondholders." See Aug. 4 Hr'g Tr. at 4:14-16, 5:1-3.

On August 10, 2011, and August 19, 2011, the FRBNY filed garnishee's statements, which reiterated the court's comments from the August 4, 2011

conference that the orders attached funds belonging to the Republic, not funds belonging to the bondholders.  The statements went on to say:  "The New York Fed does not hold property of the Republic, either now or on August 1, 2, and 3, 2011.  Accordingly, the New York Fed does not have in its possession or custody any property specified in the Attachment Order[s]."

BODEN 12 Bond Payments

Although the Republic has not paid principal or interest due on plaintiffs' bonds since 2001, the Republic has made and continues to make payments on the BODEN 12 bonds, which were first issued in 2002.  The Republic makes two payments each year on the BODEN 12 bonds—a payment of interest only on February 3, and a payment of interest and principal on August 3.

Plaintiffs believe that the payment due on August 3, 2011, was approximately $2.2 billion.  As stated above, plaintiffs believed that those funds were to be transferred to accounts of the Republic's paying agents—BCRA and Citibank—at the FRBNY.  Plaintiffs believed that the funds were thereafter intended to be transferred out of the FRBNY and eventually to other institutions representing the holders of the BODEN 12 bonds.

Plaintiffs believed that BCRA was acting as the Republic's paying agent because of the following excerpt from a listing notice published by the Buenos Aires Stock Exchange:

> Notice about financial services:  Will be paid in Buenos Aires by the Central Bank of the Republic of Argentina, at the option of the holder, in cash in U.S. dollars or through credit to respective cash accounts that owners of registry accounts have.  Holders may request transfers on the New York market, or others that the Central Bank of the Republic of Argentina may determine.

Neuhaus Decl., Ex. H (certified translation).

Plaintiffs believed that Citibank was also acting as a paying agent for the Republic with respect to holders outside of Argentina because Citibank and the Republic have had a substantial banking relationship for many years, and because Citibank has been the paying agent for the Republic with respect to other bonds, as well as a major custodian for securities held by the Republic.

Citibank, BCRA, and the Republic deny that the August 3 payment worked as plaintiffs believed.  Instead, they contend that the Republic's payment to the BODEN 12 bondholders occurred via book entries in Argentina.

According to BCRA, Citibank, and the Republic, the Republic made payment on the bonds by transferring funds in Argentina through the *Central de Registro y Liquidación de Instrumentos de Endeudamiento Público* ("CRYL"), an Argentine clearing system managed by BCRA.  They state that this payment procedure is consistent with the listing notice language quoted above specifying that payment will be made in Buenos Aires.

Upon receiving the funds, CRYL apparently transfers them to the accounts of entities registered at CRYL as holders of the BODEN 12 bonds, including *Caja de Valores S.A.* ("Caja").  Caja is the principal securities intermediary in Argentina—the counterpart of the Depository Trust Company in the United States—and is a private, non-governmental entity.  Caja is the registered holder at CRYL with the largest holdings of the BODEN 12 bonds. With respect to Caja, the funds are credited into Caja's U.S. dollar-denominated account at BCRA in Buenos Aires, and Caja in turn credits the

accounts of participants that hold interests in the BODEN 12 bonds, including

domestic holders as well as Citibank Argentina, as custodian for certain

bondholders, as discussed in more detail below.

According to the Republic and BCRA, the specific August 2011 payment

on the BODEN 12 bonds was made as follows:  On July 29, 2011, the

Secretariat of the Treasury of the Ministry of the Economy issued an

instruction to BCRA to transfer the necessary funds out of the Treasury's

account at BCRA in Buenos Aires.  On August 1, 2011, pursuant to this

instruction, BCRA transferred the funds out of the Treasury's account in

Argentina into a movement account at BCRA in Argentina, which is an account

used exclusively by CRYL from which BCRA, as administrator of CRYL,

transfers the funds to the accounts of entities registered at CRYL as holders of

the BODEN 12 bonds, including Caja.

According to the Republic, BCRA, and Citibank, as a matter of Argentine

law, the Republic no longer had any right to the funds once the payment had

been made by the Republic to CRYL.  In support of this position, Citibank

submitted the following opinion of Argentine counsel, Hugo N.L. Bruzone:

> Pursuant to the terms and conditions of the BODEN 2012 Bonds,
> as described in Section 6 of the Resolution, the BODEN 2012
> Bonds are payable in Buenos Aires, Argentina.  From the
> perspective of the Republic, this occurs once the payment of
> principal and interest is credited to the account of [CRYL] with
> [BCRA].

> Under Argentine law, the Republic has no rights to or interest in
> the payment made in the Argentine common depositary system of
> [Caja], and the bondholders are the funds' beneficial owners of the
> payments made therein.

> Further, pursuant to Section 6 of the Resolution, when the funds are credited to the custody accounts of Citibank Argentina, the funds are available for withdrawal in Argentina or for transfer to accounts outside of Argentina pursuant to the instructions of the custody account customers.

Bruzone Decl., ¶¶ 5-7.

BCRA denies that it acted as a paying agent for the Republic with respect to the August BODEN 12 payment.  BCRA states it only participated in the payment process pursuant to its banking functions described above.  BCRA claims that any services it provided after the Republic transferred the payment amount to CRYL were limited to facilitating subsequent transfers within Argentina (from CRYL onward) and settling transfers at the request of domestic Argentine banks (e.g., Citibank Argentina) as part of any distribution of funds by those banks to BODEN 12 bondholders or Euroclear (a European clearing agent) outside of Argentina.

According to BCRA, the first sentence of the listing notice quoted above simply describes BCRA's clearing function (through CRYL) and a "seldom used" alternative of paying funds in cash.  BCRA states that the notice is clear that payment is made in Buenos Aires, and therefore the second sentence addresses bondholders outside of Argentina and confirms that payment proceeds may be transferred through New York or other financial markets with which BCRA is able to settle currency transfers.  For example, it has happened in the past, although BCRA and Citibank claim that it did not happen in August 2011, that BCRA receives transfer orders from Citibank Argentina to transfer funds to Citibank's account at the FRBNY, and BCRA has executed those orders by

- 11 -

debiting Citibank Argentina's account at BCRA and transferring the funds.

Citibank also denies that it acted as a paying agent for the Republic.
Citibank states that neither it nor its Argentine branch ("Citibank Argentina")
was ever in possession of any funds in which the Republic had an interest in
connection with the August payment to the BODEN 12 bondholders.  Instead,
Citibank explains, its role was as custodian for certain bondholders.  Citibank
Argentina maintained custody accounts (the "Custody Accounts") pursuant to
custody account agreements (the "Custody Account Agreements") entered into
with the securities intermediaries through which bondholders held their
BODEN 12 bonds.  Under the Custody Account Agreements, Citibank
Argentina acts solely for the account of its Custody Account customers in
holding securities as custodian and in receiving principal and interest
payments.  For example, Citibank acted as the custodian for Euroclear.  The
Euroclear Custody Account Agreement provides that:  "[Citibank Argentina] will
establish and maintain on its books a Customers Securities Account and will
credit to the Customers Securities Account all Custody Securities received by
[Citibank Argentina] . . . for the account of . . . the Euroclear System."  Elewaut
Decl. Exs. A1, B.  The other Custody Account Agreements contain similar
provisions.

Specifically, with regard to the August 2011 payment, on August 3,
2011, Caja transferred funds for payment to the bondholders holding BODEN
12 bonds through Citibank Argentina to Citibank Argentina's U.S. dollar-
denominated account at BCRA.  Once Citibank Argentina received the funds

from Caja, it credited the Custody Accounts in Argentina of its Custody

Account customers and notified those customers that their accounts had been

credited.  On or about August 3, 2011, Citibank Argentina sent additional

notifications to several of its customers, including Euroclear.  Those

notifications stated, among other things, that,

> [Citibank Argentina] has . . . received, on your behalf, the regularly
> scheduled USD payment in respect of the BODEN 12s issued by
> the Republic of Argentina.  We have credited this USD payment to
> your local account statement (which you may review).  We have
> been in communication with the [BCRA] in order to attempt to
> transfer your USD payment held in custody by us in Argentina on
> your behalf to your designated account outside of Argentina.
> These funds are available to you for local withdrawal as well.

Elewaut Decl. Exs. D1-D7.

BCRA, Citibank, and the Republic claim that, because of the way the

bond payment was made on August 3, 2011, as described above, no funds of

the Republic passed through BCRA's or Citibank's accounts at the FRBNY.  In

fact, Citibank states that no funds of any kind in respect of the August

payment on the BODEN 12 bonds flowed through Citibank's account at the

FRBNY.  For its part, BCRA has provided plaintiffs with a summary of all of the

transactions in BCRA's account at the FRBNY on August 1-4, 2011.  According

to that summary, BCRA's account was not used to distribute payments to

bondholders.  Furthermore, as noted above, the FRBNY reported in its

garnishee's statements that no property has been identified or restrained in

either BCRA's account or Citibank's account under the attachment orders.

However, plaintiffs question the description of the August 3 payment

procedure provided by BCRA, Citibank, and the Republic.

First, plaintiffs point out that the arguments of BCRA, Citibank, and the FRBNY at the August 4 conference call into question the assertions that there were no funds to attach.  As noted above, those parties had claimed that the attachment orders had "shut down" the account of BCRA at the FRBNY.  Given the specific language in the attachment orders referring to the BODEN 12 bond payments, plaintiffs question how the orders could have shut down the account if there were never any funds flowing through the account related to the payment of the bondholders.

BCRA explains that the reason BCRA sought the August 4, 2011 conference was not that the orders had reached funds relating to the bond payment.  Rather, the FRBNY viewed the order as ambiguous and temporarily froze BCRA's entire account, apparently in an overabundance of caution, even though the FRBNY understood that the frozen transactions were unrelated to the bond payment.  As the FRBNY explained in a letter to the court, "[w]hile our reading of the Order indicated that such blocking was required, we had no reason to believe that the restrained funds were related in any way to payments on the BODEN 12 bonds."  Letter from Thomas C. Baxter, Jr., General Counsel and Executive Vice President of the FRBNY, to the Court, at 3 (Aug. 4, 2011).

Second, plaintiffs state that the information provided to date by the Republic, BCRA, and Citibank has been incomplete, self-serving, and conflicting.  Plaintiffs point to a document that appears to instruct BCRA to make payment to "HOLDERS OF BONDS"—exactly the sort of instruction an issuer would be expected to give to a paying agent.  See Eggers Decl., Ex. A.

Plaintiffs express doubt that this is the only document by which the Republic's instructions were communicated to BCRA. Plaintiffs point out that the declaration of Juan Basco, the Head of the Operations Department at BCRA, asserts that "[t]he Ministry of the Economy typically issues a transfer order to BCRA, requesting that BCRA debit a specified amount and credit that amount to CRYL, for benefit of certain Argentine financial institutions and [Caja], each of which holds registry accounts at CRYL." Basco Decl., ¶ 4. Basco does not state that Exhibit A to the Eggers Declaration is the transfer order for the August 2011 payment, and Exhibit A does not mention CRYL, Argentine financial institutions, or Caja. Plaintiffs also point out that CRYL is a part of BCRA and is not separately incorporated and that the CRYL's movement account, discussed above, is not even in CRYL's name.

Plaintiffs state that they have repeatedly asked for documents showing the actual transfers to bondholders—transfer and payment orders, credit and debit entries, and similar information and documents—but claim that the other side has stonewalled their requests, suggesting that they have something to hide.

Finally, plaintiffs question the notices Citibank has provided advising that bond payments had been credited to accounts at Citibank Argentina. According to plaintiffs, many of the notices appear to have originated in New York, not Argentina. Plaintiffs state that they have received no documents showing how those funds arrived at Citibank, what happened to them once at Citibank, or what happened after the funds left Citibank. Nor are there any

documents showing transfers to bondholders other than through Citibank, even though Citibank allegedly received only $1.4 billion of the $2.2 billion August payment.

Argentine Debt Relief Fund

On March 1, 2010, the Republic issued Decree 298/2010 and created the Argentine Debt Relief Fund (the "Debt Relief Fund").  The purpose of the Debt Relief Fund is to use BCRA's foreign currency reserves to pay off commercial debt of the Republic.  In early 2011, approximately $7.5 billion in BCRA reserves was transferred to the Republic to enable the Republic to pay certain commercial debt obligations, including the BODEN 12 bonds.  The Republic deposited these funds into an account of the Republic's Treasury at BCRA.  In exchange, the Republic gave BCRA a non-transferrable ten-year bill, with interest capped at a maximum one percentage point below the annual LIBOR rate.  As of January 7, 2011, when the note was issued for the 2011 transfer, the annual LIBOR rate was less than one percent, meaning that the interest rate for the note was effectively zero.

Plaintiffs claim that the Republic appropriated these funds from BCRA's dollar reserves on terms contrary to BCRA's charter and contrary to the normal practices of central banks.  BCRA's charter prohibits BCRA from making loans to the Republic, except in certain limited circumstances and only if the Republic pays back the loan within twelve months.  However, the authorizing decrees for the Debt Relief Fund issued by the Republic declared the transactions to be exempt from the restrictions in BCRA's charter.

- 16 -

These facts are relevant because, as discussed below, accounts of a central bank can be attached in certain circumstances where the bank is not using the funds for traditional central banking functions.

The Current Motions

Plaintiffs now seek expedited discovery from the Republic and BCRA concerning the attachment orders and compliance with those orders.  Plaintiffs have provided proposed document requests and deposition topics.

Plaintiffs request that the court defer ruling on the motions to confirm and vacate the orders so that the discovery motion can be decided, thus allowing the court to resolve the motions to confirm and vacate at a later time on a complete record.

The Republic, BCRA, and Citibank oppose plaintiffs' motion for expedited discovery.  They also move to vacate the attachment orders.

Discussion

Because the attachment orders failed to reach any funds, the attachment orders are vacated.  The motion for expedited discovery is denied as moot.

Motions to Vacate / Confirm the Attachment Orders

The Republic, BCRA, and Citibank move to vacate the attachment orders on three grounds:  that the orders failed to reach any property, that the orders are void under the Foreign Sovereign Immunities Act (the "FSIA"), and that the orders violate UCC Article 4-A and Regulation J.

Failure to Reach Property

Under New York law, a "levy by service of an order of attachment upon a

- 17 -

person other than the defendant is effective only if, at the time of service, such person owes a debt to the defendant or such person is in the possession or custody of property in which such person knows or has reason to believe the defendant has an interest . . . ."  N.Y. C.P.L.R. § 6214.  A bank account consists of "nothing more or less than a promise to pay, from the bank to the depositor."  NML Capital, Ltd. v. Banco Central de la Republica Argentina, 652 F.3d 172, 192 (2d Cir. 2011) (quoting Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 21 (1995)).  A "court must vacate a void judgment or order."  Kenyon & Kenyon v. Advanced Engineering Research and Development Corp., 1998 WL 318712, at *3 (S.D.N.Y. June 16, 1998).

The case of Brown v. Morgan & Co., Inc., 265 A.D. 631 (1st Dep't 1943), aff'd, 295 N.Y. 867 (1946) is relevant to the court's analysis in this case.  In Brown, the plaintiff sought to attach funds held in an account at the defendant bank for the bondholders of an Italian corporation.  The Appellate Division reversed the order of attachment, holding that the bank held the funds, not as agent for the company, but as trustee for the bondholders for whom the funds in the account were earmarked.  Id. at 635.  In particular, the court noted that the company "lost all control over this fund" when it placed money in the account.  Id.

In this case, the attachment orders were served on the FRBNY, but the FRBNY has reported that no funds were reached by the attachment orders.  The FRBNY accounts were held by Citibank and BCRA, and the Republic had no interest in the funds contained in the accounts.  Citibank, BCRA, and the

Republic confirm that this is the case.  The Republic lost control over the funds when it made payment to CRYL.  Therefore, because the attachment orders did not reach any funds, the orders are vacated.

The Foreign Sovereign Immunities Act (the FSIA")

As discussed above, BCRA, Citibank, and the Republic state that no funds with respect to the BODEN 12 bond payments passed through the BCRA or Citibank accounts at the FRBNY.  However, they further contend that even if the accounts at the FRBNY did contain funds related to the BODEN 12 bond payments, these funds could not be properly attached under the FSIA.

Under § 1609 of the FSIA, property of a foreign state is immune from attachment or execution unless an exception to such immunity exists under § 1610.  Section 1610, in turn, provides that property of a foreign state located in the United States and "used for a commercial activity in the United States" can be attached.  28 U.S.C. § 1610.  Section 1611 of the FSIA immunizes "property . . . of a foreign central bank . . . held for its own account."  28 U.S.C. § 1611(b)(1).

Plaintiffs contend that money intended to pay the BODEN 12 bondholders in the BCRA and Citibank accounts at the FRBNY can be properly attached under § 1610 because it is property of the Republic, located in New York, and being used for a commercial purpose here, i.e., to make payments to the bondholders.  As discussed above, the Republic had no further interest in the funds designated to pay the BODEN 12 bonds once it transferred those funds to CRYL.  The funds are not property of the Republic and therefore

- 19 -

cannot be attached under § 1610.

However, plaintiffs also contend that even if § 1611 applies the funds in BCRA's account can be attached under <u>NML</u>.  "Where funds are held in an account in the name of a central bank or monetary authority, the funds are presumed to be immune under § 1611(b)(1)."  <u>NML</u>, 652 F.3d at 194, 197.  This presumption can be rebutted if a plaintiff "demonstrat[es] with specificity that the funds [at issue] are not being used for central banking functions as such functions are normally understood."  <u>Id.</u>  The Second Circuit has rejected the theory that lending by BCRA to the Republic changed title to BCRA assets in BCRA's FRBNY account.  <u>EM Ltd. v. Republic of Argentina</u>, 473 F.3d 463, 475-76 (2d Cir. 2007).

Plaintiffs suggest that the Republic is using BCRA's foreign reserves to pay the Republic's commercial debt, and they argue that this is not a normal central bank function.  Although the Republic and BCRA claim that plaintiffs have mischaracterized the payment, they contend that use of a central bank's foreign reserves to pay the commercial debt of the sovereign is a traditional central banking function.  They state that central bank reserves are commonly used to repay government debt.  <u>See, e.g.</u>, <u>id.</u> at 476 n.12 ("[G]overnments customarily retain the ability to direct their central banks to take actions with respect to the central banks' foreign exchange reserves.").  As discussed above, BCRA received a note in exchange for the funds, albeit at a very low interest rate.  However, as noted above, the Second Circuit has already held that title to BCRA assets in BCRA's FRBNY account does not change when BCRA makes a

loan to the Republic.

The attachment orders are vacated because there was no property of the Republic being used for a commercial activity in the United States. Furthermore, plaintiffs have not rebutted the presumption that the funds in BCRA's account were immune from attachment because there is no indication that they were being used for anything other than traditional central bank functions.

UCC Article 4-A and Regulation J

Finally, Citibank, BCRA, the Republic, and the FRBNY claim that the attachment orders are void under UCC Article 4-A and Regulation J. Because the attachment orders must be vacated on the other grounds discussed above, the court does not reach these further arguments.

Motion for Expedited Discovery

Because the attachment orders are vacated, plaintiffs' motion for expedited discovery is denied as moot.

## Conclusion

The court grants the motions of BCRA, Citibank, and the Republic to vacate the attachment orders.  The court denies plaintiffs' motion to confirm the attachment orders.  The court denies plaintiffs' motion for expedited discovery.

This opinion addresses the motions listed as document numbers 308, 311, 326, 331, and 335 in case 07 Civ. 2693, as well as the same motions in the related cases.

SO ORDERED.

Dated:  New York, New York
        March 28, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/12